**Robert M. TUCKER, and Lottie M. Tucker, his wife, Plaintiffs,**

v.

**Garfield CRAWFORD, and Lillian E. Crawford, his wife, Defendants.**

Superior Court of Delaware, New Castle.

Jan. 24, 1974.

Karl Parrish, Wilmington, for plaintiffs.

Stephen B. Potter, Wilmington, for defendants.

OPINION

BUSH, Judge.

Plaintiffs, Robert M. Tucker and Lottie M. Tucker, and Defendants, Garfield Crawford and Lillian E. Crawford, have filed cross motions for summary judgment under Civil Rule 56.

The facts, pertinent to the present motions, are not in dispute. Defendants were the owners of property located at 923 Lombard Street, Wilmington, Delaware, and of the dwelling house situated thereon. An agreement was entered into between the Plaintiffs and Defendants for the sale of the property and house to the Plaintiffs, and settlement was held on June 22, 1972. Seven days thereafter, on June 29, 1972, Defendants were informed that violations of the Housing Code of the City of Wilmington existed.

Suit was filed in the Superior Court seeking damages for (1) breach of either an express or implied warranty that the home was fit for its intended purpose, and (2) fraud in the inducement. Plaintiffs move for summary judgement as to the issue of liability on the basis of 2 Wilmington City Code § 34–17 (as amended by Ordinance 70–039). In short, Plaintiffs contend that Defendants' liability is established as a matter of law by the ordinance, and that a trial is only required as to the amount of damages recoverable.

The full text of the ordinance is appended hereto.[1] Basically, however, it establishes a duty on the seller of a dwelling to have it inspected for Housing Code violations by the Department of Licenses and Inspections within thirty days of the signing by the purchaser of the agreement of sale on conveyance of such property. The seller must then provide the purchaser with a copy of the written notice obtained from the Department of Licenses and Inspections at least forty-eight hours prior to signing of the agreement of sale or conveyance of the property, and attach a copy to the agreement of sale, if any. Finally, if the seller fails to conform to the above requirements, he "shall thereby be conclusively presumed to have given his warranty that the property being sold and conveyed is in compliance with the provisions of [the Wilmington Housing Code]" unless the purchaser by filing a formal notice of waiver of the inspection with the Office of the Commissioner of Licenses and Inspections accepts on an "AS IS" basis and assumes any and all responsibility for existing code violations.

Defendants, in the present case, failed to have the dwelling inspected; did not provide the Plaintiffs—Buyers with written notice or attach a copy to the agreement of sale; and Plaintiffs—Buyers did not accept on an "AS IS" basis. Violations of the Housing Code did exist, however, at the time of settlement. The Plaintiffs seek a ruling that Defendants are liable to them, as a matter of law, for the cost of the repairs necessary to bring the dwelling into conformance with the provisions of the Housing Code.

Specifically, Plaintiffs contend that Section 34–17 of the Wilmington City Code establishes a conclusive presumption of warranty. Section 34–17(a), in pertinent part, reads:

> "A seller or conveyor who violates or fails to conform to the requirements of this section, . . ., shall thereby be conclusively presumed to have given his warranty that the property sold or conveyed is in compliance with the provisions of this chapter and the rules or regulations adopted by the Department of Licenses and Inspections for the enforcement and implementation of this chapter at the time and immediately prior to the sale or conveyance."

Among the several arguments advanced in support of the position that summary judgement should be granted for Defendants is the assertion that the liability imposed by Section 34–17 of the Code

1. See Appendix.

amounted to a "civil penalty". It is argued that imposition of such a "penalty" upon Defendants, under circumstances indicating that they had no notice of either the ordinance or of any outstanding violations, would be a violation of the due process of law.

As authority for the position, Defendants cite the case of Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), which held that proof of notice was essential to a criminal prosecution involving criminal registration. In his opinion for the majority of the Supreme Court, Justice Douglas cited cases in which notice was required where only civil interests were at stake. However, the cases cited therein reflect circumstances readily distinguishable from the case at bar in which a seller is aware of the transactions pending which will affect his property rights. The present circumstances are also distinguishable in that the owner of a dwelling is in a unique position to know or readily discover the conditions which are sought to be corrected by the ordinance in question.

■ It is further argued that Defendants were not represented by counsel at time of sale and were not aware of the ordinance in question. Nevertheless, although they may have been unrepresented and may have been completely unaware of the ordinance involved, such circumstances cannot provide a basis for defeating Plaintiffs' claim. It has been recognized that persons dealing with property in a municipal area are presumed to recognize the power to regulate the construction, reconstruction and repair of buildings and to have the knowledge of ordinances relating thereto. 7 McQuillan on Corporations, § 24.505; Scanlan v. Home Ins. Co., 79 S. W.2d 186 (Tex.Civ.App.1935).

■ It is next argued by Defendants that the ordinance in question is an invalid attempt by a municipality to create civil liability among its citizens. In this regard it is clear that violation of an ordinance enacted under a municipality's police power for the protection of lives and property is itself sufficient to prove such a breach of duty as to sustain a private action for negligence. Sammons v. Ridgeway, 293 A.2d 547 (Del.1972); Farrow v. Hoffecker, 7 Pennewill 223, 79 A. 920 (Del.Super.1906). However, we are here involved with civil liability in an action arising out of a contract.

Title 22, § 802 of the Delaware Code provides that a municipality may "assume all powers which . . . would be competent for the General Assembly to grant by specific enumeration and which are not denied by statute." It further provides this grant of power includes the power to enact private or civil law governing civil relationships when "as an incident to an exercise of an independent municipal power."

In a previous interpretation of the statute cited above, the Delaware Supreme Court ruled that the authority to rectify unsanitary and unsafe conditions involving the city's inhabitants falls within the ordinary police powers and duties of municipal government. Gage v. City of Wilmington, 293 A.2d 555 (Del.1972). It follows therefore, that in the enactment of its housing code the City of Wilmington was exercising an independent municipal, and thus, was empowered by the legislature to enact private or civil law.

The statement in Defendants' supporting brief that "Constitutional permission to municipal corporations to frame their own charters does not include the right to create a civil action between citizens . . . ." is no doubt a correct statement of the majority view regarding the implied powers of a municipality under a legislative charter. However, as stated immediately above, the ordinance involved herein was enacted under a statutory commission to enact private or civil law governing civil relationships, and further, is an ordinance which contains very specific language reflecting that it is intended to affect the liability between buyers and sellers of housing within the city.

Defendants have not cited authority to support the proposition that a municipal corporation cannot expand civil liability between its citizens when so authorized by

the legislative body which possesses inherent authority to create such civil liability. To the contrary, there is considerable authority to support the validity of such an enactment.

In 1 Antieau, Municipal Corporation Law, § 6.61, Professor Antieau states that "given municipal power, there is no sound reason why municipal corporation should be denied the power to create causes of action." Furthermore, recent developments in the law involving housing contracts lead to the conclusion that the ordinance served merely to codify what has increasingly become recognized by the courts as an implied "warranty of habitability" in the sale or lease of a dwelling. This theory of warranty, in effect, makes existing housing codes a part of the contract whereby the seller guarantees that the dwelling meets minimum building requirements. Javins v. First National Realty Corp., 138 U.S.App. D.C. 369, 428 F.2d 1071 (1970), cert. denied, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); Denice v. Spotswood, 248 Md. 428, 237 A.2d 4 (1968); Kline v. Burns, 276 A.2d 248 (N.H.1971); Schiro v. W. E. Gould and Co., 18 Ill.2d 538, 165 N.E.2d 286 (1960); Boston Housing Authority v. Hemingway, 293 N.E.2d 831 (Mass.1973).

Finally, this Court must recognize that ordinances, if authorized by legislation, enjoy the same presumption of validity as statutes and will not be declared void except on unescapable grounds. Donnelly v. City of Manchester, 111 N.H. 50, 274 A.2d 789 (1971). No such grounds have been shown to exist.

■ In summary, this Court does not find that the ordinance is an invalid exercise of municipal authority because of any effect it may have on the civil liability of its residents.

■ It is also urged that the ordinance has no reasonable relation to the morale, health, welfare and safety of city residents, and thus, it is invalid as an unauthorized exercise of its police power. It is well settled law that a presumption exists in favor of an ordinance and the burden of establishing its invalidity is on the person attacking it. Furthermore, courts must assume that municipal authorities have full knowledge of local conditions and that their determination with respect to necessity and reasonableness of a regulation to promote public interests, is valid, unless the contrary is affirmatively shown. McBriety v. City of Baltimore, 219 Md. 223, 148 A.2d 408 (1959). The Defendants have failed to meet such a burden nor is there basis for a finding that there was an abuse of discretion in the enactment of 2 Wilmington City Code, § 34–17.

■ Lastly, it is urged that since the Crawfords were never given actual notice of housing code violations by the appropriate commissioner, the notice requirements of § 34–17(a) do not apply to them. In support of this position, Defendants cite as significant the phrase "any outstanding notice or order issued by the commissioner . . . ." It is then noted that § 34–18 provides procedures for notifying property owners of violations. Thus, it is contended that the phrase "outstanding notice or order" refers only to notices or orders that are actually communicated to the property owner. Nevertheless, the word "outstanding" contains no such meaning as it is known to this Court. To the contrary, it has been defined as merely that remaining undischarged, as an outstanding debt. Black's Law Dictionary, Rev., 4th Ed. (1968). Taken together, there is nothing in the language of either § 34–17 or § 34–18 to indicate that the obligations arising under the former are in any way dependent on completion of the notice procedures as outlined in the latter.

■ Finally, since subsections (1) and (2) of § 34–17 require the seller to have the premises inspected and then obtain a written notice of violations, compliance therewith should normally result in actual notice to the seller of any current violations. That being the case, Defendants should not now elude liability simply because of their own failure to comply with applicable code requirements.

The Plaintiffs' motion for summary judgment leaving the issue of damages to a jury is granted; the Defendants' motion for summary judgment is denied.

It is so ordered.

## APPENDIX

*Sec. 34.17. Copy of outstanding notices, etc., citing violations of chapter, etc., to be included as part of agreement, etc., of sale of property; property to be inspected and violations to be cited prior to leasing.*

(a) Any person who sells or conveys any dwelling, dwelling unit, hotel or rooming house in the city shall include in or as a part of the agreement or instrument of sale a copy of any outstanding notice or order issued by the commissioner of licenses and inspections citing violations of the provisions of this chapter or of any rule or regulation adopted by the department of licenses and inspections for the enforcement and implementation of this chapter which has not been complied with. A seller or conveyor who violates or fails to conform to the requirements of this section, even if with the consent of the purchaser or transferee, shall thereby be conclusively presumed to have given his warranty that the property being sold or conveyed is in compliance with the provisions of this chapter and the rules or regulations adopted by the department of licenses and inspections for the enforcement and inplementation of this chapter at the time and immediately prior to the sale or conveyance.

(1) Any person who sells or conveys any dwelling, dwelling unit, hotel or rooming house in the city, shall cause the same to be inspected by the department of licenses and inspections no earlier than thirty days before the signing by the prospective purchaser or transferee of the agreement of sale or the conveyance of such property whichever earlier occurs.

(2) Obtain from the department of licenses and inspections a written notice listing all violations of the city Housing Code at the date of the inspection.

(3) Provide a copy of such written notice to the prospective purchaser or transferee at least forty-eight hours prior to the signing by the prospective purchaser or transferee of any agreement of sale or the conveyance of such property, whichever earlier occurs, and attach a copy of such written notice to the agreement of sale, if any, as a part thereof.

(4) Whenever the prospective purchaser or his duly authorized agent or the transferee of any property to be sold or transferred is willing to accept on an "as is" basis and assume any and all responsibility for existing code violations, he may waive the inspection required in paragraph (1) of this subsection by executing a formal notice thereof in the office of the commissioner of licenses and inspections.

(b) Any person who leases or rents any dwelling or any habitation or living unit as defined in this chapter, shall, prior to such leasing or renting, (1) cause the same to be inspected by the commissioner of licenses and inspections, and (2) cause any violations of this chapter which may be cited as a result of such inspection to be corrected prior to permitting occupancy of such dwelling or habitation or living unit.

The provisions of this subsection shall apply to all leases or rentals, made on and after July 1, 1969, whether such leasing or rental is a new lease or rental or a releasing or rerental.

(c) Whenever any person sells any dwelling, dwelling unit, hotel, or rooming house in the city wherein there is a retention of title by the seller and a deferred installment payment plan is set forth in the contract or lease agreement, the seller shall comply with the provisions of this section and the paragraphs designated (1) (2) (3) of subsection (a).

The provision of paragraph (4) of subsection (a) shall not be applicable to any such sale. (Ord. No. 69–036, §§ 1, 2; Ord. No. 70–039, §§ 1, 2; Ord. No. 71–077, § 1.)