Thomas J. KOVAL and Rita B. Koval, his wife, and Thomas J. Koval, as next friend of Thomas J. Koval, Jr., Plaintiffs,

v.

Robert C. PEOPLES and Robert C. Peoples, Inc., a corporation of the State of Delaware, Defendants.

Superior Court of Delaware, New Castle County.

Submitted March 27, 1981.

Decided May 29, 1981.

G. Thomas Sandbach, Wilmington, for plaintiffs.

Richard W. Pell, and Colin M. Shalk (argued), of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendants.

TAYLOR, Judge.

I

Defendants contracted to construct a house for plaintiffs on a lot in Rolling

Meadows, New Castle County, Delaware. The lot was not serviced with public water, and the contract provided that defendants would provide a well. According to the complaint, defendants delivered possession of the house together with the well, septic tank and other auxiliary systems to plaintiffs on August 29, 1975. The complaint alleges that the water produced by the well was polluted and contaminated by hardness, salts, iron, minerals, dissolved solids, bacteria, turbidity and discoloration and that it was unfit for domestic use and consumption. The complaint contends that the condition of the water which defendants provided for the house constituted breach of defendant's obligations under the contract and seeks the cost of installing a water purifier system to make the water usable and compensatory damages resulting from the breach and punitive damages. The contract provided "included in the price is a well . . ." It is undisputed that defendants did provide a well which produced water. The issue is whether defendant's contractual obligation required him to provide a well whose water would comply with the water quality requirement of the building and plumbing codes adopted by New Castle County and the drinking water standards found in the regulations of the State Board of Health.

## II

In the law of contracts, it is a recognized principle that existing laws form a part of a contract. 4 *Williston on Contracts* § 615, pp. 597, 624; 17A *C.J.S.* Contracts § 330, p. 295. This principle was stated by this Court in *Trader v. Jester*, Del.Super., 1 A.2d 609 (1938) in the following language:

> The rule is well established that the laws in force at the time and place of making the contract enter into, and form a part of it as if they had been expressly referred to, or incorporated in, its terms. The obligation of the contract is measured by the standard of the laws existing at the time of the making of the contract. 12 Am.Jur. 14; *W. B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298, 97 A.L.R. 905.

This principle applies equally to municipal ordinances. See annotation 110 *A.L.R.* 1048 et seq. Courts in various states have held that contracts for performance of work are controlled by governmental regulations relating to the manner in which the work may be performed or the quality of the work, in the absence of express contract provision to the contrary. Ibid.

In *Denice v. Spotswood I. Quinby, Inc.*, Md.App., 248 Md. 428, 237 A.2d 4 (1968) the Maryland Court of Appeals held that the Municipal Building Code specification of ceiling height was an implied condition of a contract for construction of a house. The failure to meet that requirement was held to be a breach of the building contract irrespective of the question of whether the house was habitable. The same principle was applied by the Maryland Court of Appeals in *Hooton v. Kenneth Mumaw Plumbing & H. Co., Inc.*, Md.App., 271 Md. 565, 318 A.2d 514 (1974) with respect to a contract for replacing a heating system.

In *Carpenter v. Donohoe*, Colo.Supr., 154 Colo. 78, 388 P.2d 399 (1964) the Supreme Court of Colorado held that the building code requirements concerning sanitary sewage were inherent in an agreement of sale between builder-vendors and purchasers of a newly constructed house and must be complied with. The vendors' violation of these requirements entitled the purchaser to damages.

*Schiro v. W. E. Gould & Company*, Ill. Supr., 18 Ill.2d 538, 165 N.E.2d 286 (1960) held that a contract for the purchase of land and building to be constructed by defendants "included, as an integral part, the relevant provisions of the City Code" with reference to the water and drainage and plumbing system and that violations thereof entitled the purchaser to damages.

Courts have used different approaches in reaching the result that government regulations have an effect on contractual obligations and rights. In some cases the Court has presumed that the parties intended to incorporate existing laws. *Manvell v. Weaver*, Wash.Supr., 53 Wash. 408, 102 P.

36 (1909); *Illinois Bankers' LIfe Assn. v. Collins*, Ill.Supr., 341 Ill. 548, 173 N.E. 465 (1930); *Schiro v. W. E. Gould & Company*, supra; *Monson v. Fischer*, Cal.App., 118 Cal.App. 503, 5 P.2d 628 (1931). Some Courts have merely stated the proposition that in the absence of contrary provisions in the contract existing laws are an obligation of the contract with the same effect as if expressly set forth in the contract. *Beaver County Building & Loan Ass'n v. Wenowich*, Pa.Supr., 323 Pa. 483, 187 A. 481 (1936); *Ciarlegio v. Benedict & Co., Inc.*, Conn.Supr., 127 Conn. 291, 16 A.2d 593 (1940); *Sterling Eng. & Const. Co. v. Town of Burrillville*, R.I.Supr., 108 R.I. 723, 279 A.2d 445 (1971). Other Courts have held that existing law is an implied term of every contract. *Citizens for Pres. of Waterman Lake v. Davis*, R.I.Supr., 420 A.2d 53 (1980); *Long v. Owens*, Idaho Supr., 21 Idaho 243, 121 P. 99 (1912); *Denice v. Spotswood I. Quinby, Inc.*, supra. Other courts have held that in the sale of a new house there is an implied warranty that the builder-vendor has complied with the building code. *Carpenter v. Donohoe*, supra. Professor Williston discusses with approval the principles which have been relied upon in the case law. 4 *Williston on Contracts* (3rd ed.) § 615. Professor Corbin contends that there is no basis for implying that statutory provisions form a part of the contract. 3 *Corbin on Contracts* § 551, p. 197. However, he recognizes that existing statutes constitute "surrounding circumstances" which may be considered in interpreting the terms of a contract. Ibid, p. 198.

The significance of the above cited decisions is their unanimity that a statute or ordinance which purports to impose a requirement or a restriction on a subject matter which is directly involved in a contract will be given effect in the application and enforcement of the contract unless the contract by clear language removes the contractual undertakings from the effect of the law or ordinance.

It has been noted above that Delaware has accepted the principle that existing laws "from a part of [the contract] as if

they had been expressly referred to, or incorporated in, its terms [and] the obligation of the contract is measured by the standard of [those] laws". *Trader v. Jester*, supra.

In this State, statutes and codes which are designed to protect the health and safety of the public establish a standard governing construction, equipping or use of facilities or property. This principle has been applied in this State in determining the standard applicable to tort claims.

*Sammons v. Ridgeway*, Del.Supr., 293 A.2d 547 (1972); *Nance v. Rees*, Del.Supr., 161 A.2d 795 (1960).

In *Tucker v. Crawford*, Del.Super., 315 A.2d 737 (1974) this Court recognized that various states have held that statutory requirements governing buildings are an implied obligation of a contract involving a building. *Tucker* accepted that principle in upholding the validity of a Wilmington ordinance which imposed liability upon a seller of a residence which failed to comply with the Housing Code. *Brown v. Robyn Realty Co.*, Del.Super., 367 A.2d 183 (1976) held that a statute which established a Landlord-Tenant Code, 25 *Del.C.* Chapters 51–65 engrafted the Code provisions on subsequent rental agreements.

■ In view of the principle stated above and the specific control which this State and County have exercised over dwelling construction, I do not find it necessary to rest this decision upon an implied warranty of habitability. Applying this principle, I conclude that compliance with applicable laws and regulations is a requirement and condition of building contracts for work to be performed in this State unless the contract expressly provides for a different measure of performance.

### III

■ The contract in this case primarily involved the construction of a dwelling house. The contract's provision for a well intended to supply the water needs of the house. It contains no specification as to the quantity or quality of the water. I have

noted above that the building and plumbing codes applicable to New Castle County, which have the force of law (9 *Del.C.* § 1101), require dwelling houses to be supplied with potable water. I conclude that a well provided under a contract for the construction of a dwelling house must meet the water requirements for the dwelling house as those requirements have been established by law. If the parties contemplate a different standard, such departure from the code requirements must clearly appear in the contract. Here, there is no contract language showing that the parties intended the contractual obligation to depart from the requirements of the law.

Defendants provided plaintiffs with a "Homeowner's Service Policy" which provided:

> Wells are guaranteed to provide a minimum flow of 400 gallons per 24 hours for a period of one year.

This established a volume standard which defendants guaranteed. It made no reference to the nature or quality of the water. Defendants contend that there is no express or implied warranty governing the quality of the water to be supplied by the well. Further, defendants contend that this well meets the standard of habitability in that the water is potable.

16 *Del.C.* § 7909 provides:

> All premises intended for human habitation or occupancy shall be provided with a supply of pure and wholesome water.

Substantially the same language appears as a definition of "potable water supply" in § 1701.1(1) of the BOCA Basic Building Code which was adopted by New Castle County. *New Castle County Code* § 5.1. § 1705.1 of the BOCA Basic Building Code which specifies the required water supply system provides:

> Every building in which people live, work, or congregate shall be provided with a supply of clean, cool and potable water . . .

Section P–201.0 of the 1970 BOCA Plumbing Code which was adopted by New Castle County defines "potable water" as:

> Water free from impurities present in amounts sufficient to cause disease or harmful physiological effects and conforming in its bacteriological and chemical quality to the requirements of the Public Health Service Drinking Water Standards or the regulations of the public health authority having jurisdiction.[1]

Regulations adopted by the State Board of Health pursuant to 16 *Del.C.* § 122 provide drinking water standards. Section 22.-51 of those regulations states:

> Drinking water shall contain no impurity which would cause offense to the sense of sight, taste or smell.

These regulations apply to public water suppliers in Delaware. With respect to a dwelling unit, a public water supplier is a person who furnishes water for more than three dwelling units. Section 22.201. However, the portion of the 1970 BOCA Plumbing Code quoted above requires that potable water with respect to bacteriological and chemical quality must conform to the Public Health Service Drinking Water Standards or the regulations of the public health authority having jurisdiction thereof. I conclude that this provision incorporates the pertinent portions of the Board of Health Regulations including Section 22.51. In the absence of different water quality standards for single dwelling units, and recognizing that the water uses for dwelling units are likely to be the same regardless of the number of units drawing on the supply, I conclude that the water quality standards found in the State Board of Health regulations determine the requirements for potable water as that term is used in the Codes adopted by New Castle County. Therefore, if the water failed to meet all of the above standards, the water was not potable and the Code requirements were not met.

■ *Mazurek v. Nielsen*, Colo.App., 599 P.2d 269 (1979) and *Lyon v. Ward*, N.C. App., 28 N.C.App. 446, 221 S.E.2d 727 (1976), which involved contracts by builder-

---

1. The same definition appears in the 1978 BOCA Plumbing Code.

vendors, held that the builder-vendor was bound by an implied warranty that the well supplied with the house would supply the house with an adequate supply of usable water under normal use and conditions.[2] *Bosse v. Koehler*, Md.App., 262 Md. 593, 278 A.2d 602 (1971); *Elderkin v. Gaster*, Pa. Supr., 447 Pa. 118, 288 A.2d 771 (1972); *McDonald v. Mianecki*, N.J.Supr., 79 N.J. 275, 398 A.2d 1283 (1979); *Ruane v. Cardinal Realty, Inc.*, N.H.Supr., 116 N.H. 321, 358 A.2d 412 (1976) and *Krol v. York Terrace Building, Inc.*, Md.App., 35 Md.App. 321, 370 A.2d 589 (1977) held that the failure to provide an adequate supply of usable water is a violation of a statutory warranty of habitability.

The significance of these cases is that courts looked beyond the terms of the contract to determine the duty of the house builder. In *McDonald v. Mianecki*, supra; *Mazurek v. Nielsen*, supra, the contract, as here, provided that the builder would furnish a well but did not specify its nature or its product.

■ Here, defendants contracted to provide a dwelling house with a well. I conclude that under that contract defendants were required to provide a water supply for the house which satisfied the requirements of the governmental regulations governing water for dwellings.

### IV

■ Turning to the condition of the water which the well provided, there is evidence that from the time plaintiffs occupied the house, the water was unpalatable, had a high iron content, an unpleasant odor and a rusty look. All of the water tests showed excessive iron content. This is not an instance where the water initially was acceptable and its nature changed thereafter.

I find sufficient evidence that the well water did not meet the standards of the regulations to withstand defendants' mo-

tion for summary judgment on that ground. Whether defendants provided a proper water treatment method to assure the water entering the house met the standards depends upon resolution of fact issues and cannot be resolved at summary judgment stage. Insofar as the complaint seeks damages for illness of their son, plaintiffs have withdrawn that portion of their claim and no action by the Court is called for.

### V

■ The remaining issue is whether plaintiffs' claim for punitive damages can withstand the motion for summary judgment.

It is uncontroverted that when plaintiff complained of the condition of the water defendants installed a water filtration system, a water softener and a chlorinator. However, the time reference is most imprecise. Plaintiffs contend, with less than precise evidentiary material, that inordinate delay occurred before defendants commenced to give the problem attention. Defendants' factual presentation is equally indefinite. With this state of the record, the Court cannot say that a factual showing has been made by defendants that a basis for punitive damages cannot be proved at trial. *Moore v. Sizemore*, Del.Supr., 405 A.2d 679 (1979).

### VI

In summary, after viewing the factual material and all reasonable inferences therefrom most favorably to plaintiffs, *Murphy v. Godwin*, Del.Supr., 303 A.2d 668 (1973); *Coleman v. Garrison*, Del.Supr., 349 A.2d 8 (1975); *Collins v. F. W. Woolworth Co.*, Del.Supr., 295 A.2d 732 (1972), defendants are not entitled to summary judgment and the motion is denied. IT IS SO ORDERED.

---

**2.** While the implied warranty of habitability may govern the relationship between the house builder and the person who is acquiring the house, it does not apply to the subcontract between the builder and a well driller. *Lyon v. Ward*, supra; *Atlas Const. Co., Inc. v. Aqua Drilling Co.*, Wyo.Supr. 559 P.2d 39 (1977); 90 *A.L.R.2d* 1359.