**C & F MAINTENANCE AND PROPERTY MANAGEMENT, INC., and C. James Fabian, Appellants,**

v.

**ELIASON AND KNUTH DRYWALL COMPANY, INC., Appellee.**

No. 86–1243.

Supreme Court of Iowa.

Jan. 20, 1988.

Stuart M. Pepper, and Jeffery G. Flagg, Des Moines, for appellants.

Terrence A. Hopkins and Robin L. Goodman of Hopkins & Huebner, P.C., and John E. Orrell, Jr., Des Moines, for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

CARTER, Justice.

C & F Maintenance and Property Management, Inc. (C & F Maintenance) and C. James Fabian, the owners of a motel destroyed by fire in 1981, became embroiled in litigation as a result of that occurrence. The present action is maintained by C & F Maintenance and Fabian as third-party plaintiffs against Eliason and Knuth Drywall Co., Inc. (Eliason), the drywall contractor for the construction of the motel.

After most of the other claims in the litigation were settled, the case between C & F Maintenance and Eliason was scheduled for trial on August 4, 1986. On that date, however, the district court granted Eliason's pending motion for summary judgment thereby dismissing the claims of C & F Maintenance and Fabian against that third-party defendant. The court of appeals affirmed that order. For reasons which are discussed, we find that the record reveals genuine issues of material fact concerning the claims of the third-party plaintiffs which preclude the granting of summary judgment. We therefore vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the matter to the district court for further proceedings in the litigation.

In 1972, Royal Inns of America constructed a motel in West Des Moines. Plaintiffs purchased the motel in 1980 and were operating it at the time of the fire. It is conceded by the parties that, at the time the motel was constructed, local ordinances required the building to be one-hour fire resistive.

Third-party plaintiffs' action against Eliason is based on breach of contract and negligence for violation of applicable building codes. It is alleged that at least one-half inch thick sheetrock was required in the corridor and stairwell ceilings in the rental areas of the motel in order to satisfy the one-hour fire-resistive requirements. It is further alleged that Eliason's contract required the installation of that type of material, but that Eliason completely omitted any sheetrock in those ceiling areas. Instead, it is claimed, Eliason left only exposed wood framing in the ceiling areas which was later concealed by a drop ceiling installed by another subcontractor. Eliason disputes these allegations and maintains that its obligation was only to sheetrock up to the ceilings in the rental areas.

On December 19, 1984, and again on June 26, 1986, Eliason moved for summary judgment based upon affidavit of R. Jarold Palmer, who was an estimator for Eliason in bidding the job. The averments of that affidavit express agreement with Eliason's interpretation of what the contract required it to do. These motions were overruled by the district court on the grounds that (a) the contract documents could be interpreted as requiring that the ceilings in the rental areas be drywalled by Eliason, and (b) the extrinsic evidence was in conflict on this issue.

Brian Oldfield, vice president of Royal Inns of America, negotiated the contract with Eliason. Oldfield's deposition was taken subsequent to the court's rulings on the first two summary judgment motions. His testimony suggests that, although Eliason's bid proposal did include sheetrocking the stairwell and corridor ceilings, it was not Royal Inns' intent that this be done. This, he explained, was because Royal Inns, as builder-owner-operator, did not feel that drywalling these ceilings was necessary to comply with local building codes and did not want to spend the money. Based upon this newly acquired evidence, a third motion for summary judgment was filed by Eliason and granted by the district court.

In seeking reversal of the judgment, the third-party plaintiffs assert that, irrespective of the contract issues, Eliason may be found to be liable on its negligence claims for failure to comply with building code requirements. As we observed in *State ex rel. Turner v. Koscot Interplanetary, Inc.,* 191 N.W.2d 624, 630 (Iowa 1971):

> It is well established, laws having for their purpose the legitimate protection of health, safety, morals and welfare of the people are not constitutionally prohibited. And where, as here, state legislation addressed to that end is reasonable and appropriate, all contracts are subject thereto.

Consistent with these views, we accept plaintiffs' argument that local ordinances governing buildings may be an implied obligation of a construction contract. The rationale is summarized as follows in *Koval v. Peoples,* 431 A.2d 1284, 1285–86 (Del.Super.Ct.1981):

> Courts have used different approaches in reaching the result that government

regulations have an effect on contractual obligations and rights. In some cases the Court has presumed that the parties intended to incorporate existing laws. Some Courts have merely stated the proposition that in the absence of contrary provisions in the contract existing laws are an obligation of the contract with the same effect as if expressly set forth in the contract. Other Courts have held that existing law is an implied term of every contract....

The significance of the above ... is their unanimity that a statute or ordinance which purports to impose a requirement or a restriction on a subject matter which is directly involved in a contract will be given effect in the application and enforcement of the contract unless the contract by clear language removes the contractual undertakings from the effect of the law or ordinance.

*Id.* (citations omitted).

■ Eliason seeks to avoid this principle by asserting it was to comply with the building code only to the extent of the work which it contracted to perform. While this is doubtless a valid argument, we believe that the issue of Eliason's responsibilities under the contract remained a matter of disputed fact at the time the motion for summary judgment was granted. Indeed, the district court recognized on at least three occasions that Eliason's obligations under the contract could not be ascertained as a matter of law from the contract documents and turned upon extrinsic evidence.

There is a certain degree of ambiguity in the typewritten provisions of the contract concerning the precise areas to be sheetrocked. The agreement states:

The work herein listed does not limit the work required to only those items listed. It is the intent of the Sub–Contract Agreement to complete all work intended by the Contract Documents, and necessary to insure Royal Inns of America to have a full and complete working system.

Furnish all labor, material and equipment necessary to complete all drywall work required, in accordance with plans and specifications and to comply with all state and local codes and ordinances for the Royal Inn Hotel, Restaurant and Lounge of Des Moines, work including but not limited to the following:

....

*Sheetrock*

all wood interior walls

....

Ceilings to receive ½″ firecode sheetrock nailed to wood framing

Walls to receive ⅝″ firecode sheetrock glued to wood studs

....

Sheetrock to corridor and stairwell ceilings in rental areas

In addition to the foregoing provisions, the contract documents include finished plans and specifications. Sheet A–21 of the plans indicates five-eighths inch sheetrock on the ceilings.

In resistance to the motion for summary judgment, the third-party plaintiffs offered the deposition of Carlyle W. Peterson, a licensed structural engineer whom they had engaged as an expert witness. That witness indicated that at least one-half inch sheetrock in the rental area ceilings was required in order to comply with the local building code. In addition, this witness interpreted sheet A–21 of the finished plans as calling for either five-eighths inch or one-half inch drywall material in the rental area ceilings in the completion of Eliason's contract.

■ In several cases, we have applied the standard of interpretation contained in Restatement (Second) of Contracts § 212(2) (1979), which provides:

A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence. Otherwise a question of interpretation of an integrated agreement is to be determined as a matter of law.

See *Young v. Cedar County Work Activity Center, Inc.,* 418 N.W.2d 844, 848 (Iowa 1987); *Borgen v. Klemm,* 391 N.W.2d 252, 256–57 (Iowa 1986); *First Nat'l Bank of Creston v. Creston Implement Co.,* 340 N.W.2d 777, 782 (Iowa 1983). In deciding the issue as a matter of law, the district court relied on the principle that the rights of third persons claiming to be beneficiaries of a contract to which they are not parties can rise no higher than those of the original promissee. Eliason correctly notes that we recognized this principle in *Olney v. Hutt,* 251 Iowa 1379, 1383, 105 N.W.2d 515, 518 (1960). We agree that within the context of the present issues the intention of the original contracting parties is binding upon these third-party plaintiffs. That intention is, however, an issue of ultimate fact.

The district court and the court of appeals have, we believe, failed to adequately distinguish between the ultimate intent of the original contracting parties and the testimony of a single witness concerning what that intent was. If the rights of Royal Inns of America, as a party to the action, were at issue, Oldfield's deposition testimony might be binding as a judicial admission against that litigating party's interest. However, the present controversy is between Eliason and these third-party plaintiffs. Under these circumstances, we find Oldfield's testimony is only some evidence as to the meaning of the agreement and is not conclusive on the parties to the appeal given the conflicting opinion of plaintiffs' expert witness.

We vacate the decision of the court of appeals. The judgment of the district court is reversed and the case is remanded to that court for further proceedings in the litigation not inconsistent with this opinion.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.