# IN THE COURT OF APPEALS OF IOWA

No. 23-0795
Filed July 3, 2024

**PAUL YAKEL and THERESE YAKEL,**
    Plaintiffs-Appellants,

**vs.**

**RANDALL W. WHEELER,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Pottawattamie County, James S. Heckerman, Judge.

Homeowners appeal the district court's grant of summary judgment dismissing their breach-of-contract, breach-of-implied-warranty, and negligent-construction claims arising from a home-siding-replacement project. **AFFIRMED.**

Olivia R. McDowell and Sean A. Minahan of Lamson Dugan & Murray LLP, Omaha, Nebraska, and Theodore T. Appel of Lamson Dugan & Murray LLP, West Des Moines, for appellants.

Brody D. Swanson of Peters Law Firm, P.C., Council Bluffs, for appellee.

Heard by Schumacher, P.J., and Badding and Langholz, JJ.

**LANGHOLZ, Judge.**

Paul and Therese Yakel believe that the replacement siding on their home was installed defectively. So, as one might expect, the Yakels sued the company that installed the siding—Lightwine Construction. But this appeal is not about those claims against Lightwine. The Yakels voluntarily dismissed them.

Rather, the Yakels ask us to consider whether they may recover for their damages caused by the improper installation from Randy Wheeler, whom they paid $800 to design their home improvements and help find contractors, including Lightwine. They allege that their oral contract with Wheeler also included his services as their general contractor. And so they seek to hold him liable for claims of breach of contract, breach of implied warranty, and negligent construction for his allegedly negligent conduct selecting Lightwine and directing the installation.

But the Yakels have a problem in surviving summary judgment. They both testified in two depositions each—in sync on a critical fact: "Randy [Wheeler] was not our general contractor." And the undisputed evidence shows that they selected Lightwine and contracted with Lightwine directly rather than paying Wheeler under a general contract. Thus, regardless of Wheeler's precise involvement in the installation, no reasonable jury could find that the parties contracted for Wheeler to be the general contractor on the project. So their breach-of-contract and breach-of-implied-warranty claims based on the contrary theory fail as a matter of law. Because their negligence claim also seeks to remedy their defeated expectations on the construction project, the economic-loss doctrine forecloses it as well. Therefore, the district court did not err in granting summary judgment to Wheeler and dismissing all the Yakels' claims.

## I.  Factual Background and Proceedings

The Yakels are homeowners in Council Bluffs.  In 2014, they embarked on several home-improvement projects, including replacing their siding.  They contacted Carson Stone & Supply, LLC, seeking installation and design consulting.  From there, the Yakels were referred to Randy Wheeler for design work.

Wheeler was tasked with the "overall design" of the Yakels' improvements, specifically the "curb appeal" of their home and ensuring the "new porch," "pergolas," and other aspects were "blended together."  To that end, Wheeler and the Yakels agreed orally to work together on selecting visually appealing materials for the siding.  The Yakels paid Wheeler $800 for design services and assistance finding contractors to perform the work, including installing the siding.

Wheeler contacted contractors and received multiple bids, presenting them to the Yakels and offering his advice.  Ultimately, the Yakels made the contractor selection—choosing Lightwine.  And Lightwine installed their siding.  Lightwine's representative believed he was hired by Wheeler and not the Yakels, so he sent the bills to Wheeler.  But Wheeler forwarded the bills to the Yakels, who in turn paid Lightwine directly.  Over the course of the project, the Yakels communicated directly with Lightwine about concerns.  And sometimes they asked Wheeler for his help in working with Lightwine to resolve them, and he did so.

The project was completed in 2015.  But roughly a year and a half later, the Yakels noticed the panels bowing, causing the siding and nails to pull away from the house.  The Yakels first tried to fix the siding on their own, but to no avail.  The damaged siding required removal and replacement with new siding.

In July 2018, the Yakels thus sued Lightwine, alleging that it breached their contract for replacing their siding "by failing to properly install the siding in a workmanlike manner." They also brought breach-of-implied warranty and negligent-construction claims based on the same conduct.

During discovery, the Yakels learned that Wheeler had been more involved in directing Lightwine's work than they had realized. Indeed, Therese Yakel eventually testified that she was unaware of the "depth" of Wheeler's involvement in the project until she "read [Wheeler's] deposition." Wheeler and Lightwine's employees inspected the Yakels' property together, crafted a project timeline for Lightwine, and established he would be "orchestrating the job." Wheeler instructed Lightwine employees on nail placement, fastener color, the location and size of unique siding pieces, and ensuring joints were caulked with clear silicone. Lightwine stated they had to get confirmation on every decision from Wheeler and they communicated regularly. Lightwine thus places the blame for any defective installation with Wheeler rather than itself.

And so, in August 2019, the Yakels amended their petition to add the same three claims against Wheeler that they first brought against only Lightwine. First, they claimed that they contracted with Wheeler "for design work and contractor services regarding the design and execution of the design on [their] home" and Wheeler breached that contract "when he negligently instructed Defendant Lightwine how to install the siding, and/or when [he] negligently hired Defendant Lightwine." Second, they claimed that Wheeler breached an implied warranty that "the work performed by him and his subcontractors would be performed in a workmanlike manner" by "selecting and instructing [his] subcontractors

negligently."  And third, they asserted a claim of negligent construction, claiming that Wheeler breached his "duty of care to properly and carefully select [his] subcontractors and to properly instruct [his] subcontractors, exercising the degree of care, skill, and knowledge ordinarily exercised by general contractors."  The Yakels also added the same three claims against Carson Stone, asserting that it was vicariously liable for Wheeler's conduct.

Wheeler moved for summary judgment, seeking dismissal of all the Yakels' claims against him.  He argued that the breach-of-contract and breach-of-implied warranty claims fail because the claims are based on damage for "construction services, not design services."  And that the undisputed facts—including the Yakels' own testimony in two depositions each—show that they contracted with Wheeler only "for design services and to help them find a contractor, *and they absolutely did not hire him as a general contractor*."  Wheeler also argued that the negligent-construction claim is barred by the economic-loss doctrine because it seeks recovery for the Yakels' defeated expectations under the various contractual relationships in this construction project.

In resistance, the Yakels argued that a fact dispute still exists over the terms of their contract despite their testimony that Wheeler was not their general contractor because Wheeler's conduct acting as a general contractor could be found to have "created contractual obligations above and beyond his design work." And since a fact dispute exists as to whether Wheeler was their general contractor, they contended that they should be able to maintain a claim for his breach of the implied warranty of workmanship applicable to general contractors.  They also argued that the economic-loss doctrine does not apply to their negligent-

construction claim for two reasons. First, because "none of [their] damages involve an economic loss but instead involve damages to property." And second, because they viewed their negligent-construction claim as an alternative theory applicable if they had no contract with Wheeler covering his conduct and they reasoned that the doctrine cannot apply if the parties have no contract.

The district court agreed with Wheeler, granted summary judgment, and dismissed the claims against him. The court reasoned that the Yakels' "primary claims stem from a breach of contract claim, and based off the Yakels['] own depositions and the amount paid to Wheeler, it is clear to this Court that Wheeler was never hired as a general contractor" and there was no "disputed *material* fact" on this point. The court also seemed to reject the Yakels' argument that the economic-loss doctrine does not apply, explaining it was "not persuaded" that "this case was not about a contract, but more about property damage."

The Yakels moved for reconsideration of the dismissal of all their claims under rule 1.904. Among other arguments, they contended that the court did not expressly address whether "the economic loss doctrine barred the negligence claim." And they again argued that the doctrine cannot apply because they allege not just "purely economic" damages but also physical damage to their home and because their negligence claim should be permitted as an alternative theory.[1] The district court summarily denied the motion for reconsideration.

---

[1] They also made a new argument that they could have a claim of negligence based on a duty arising out of agency law and that such a claim is an exception to the economic-loss doctrine. *See Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 504 (Iowa 2011). But they do not pursue this argument on appeal so we need not consider its merits or whether it was preserved for our review.

The Yakels then successfully sought to stay the district court proceedings on their remaining claims while they pursued an immediate appeal of the summary-judgment ruling on their claims against Wheeler. But our court dismissed their appeal. We reasoned that the ruling was "not final and ripe for appeal as a matter of right" and that granting permission for an interlocutory appeal would not "serve the interests of sound and efficient judicial administration." *Yakel v. Wheeler*, No. 20-1432, 2022 WL 122353, at *3 (Iowa Ct. App. Jan. 12, 2022).

So the case continued on against the other defendants in the district court. Six months later, the district court granted summary judgment to Carson Stone and dismissed those claims. In April 2023, the Yakels voluntarily dismissed their last remaining claims—the original ones against the siding installer, Lightwine. And then they filed this appeal, again seeking review of the summary judgment ruling dismissing their claims against Wheeler.[2]

## II.    Appellate Jurisdiction

At the start, Wheeler disputes whether we have jurisdiction over this appeal. He argues that the Yakels did not appeal from a final judgment because the Yakels' voluntary dismissal of Lightwine—the last remaining defendant—cannot serve as a final appealable order under our rules without the district court issuing an order addressing the dismissal. Wheeler is incorrect.

"A notice of appeal must be filed . . . within 30 days after the filing of the final order or judgment." Iowa R. App. P. 6.101(1)(b). "An order disposing of some but not all of the parties or issues in an action may be appealed within the time for

---

[2] The Yakels appealed the ruling dismissing the claims against Carson Stone too. But they voluntarily dismissed that appeal. *See* Iowa R. App. P. 6.1201(1).

appealing from the judgment that finally disposes of all remaining parties and issues to an action, even if the parties' interests or the issues are severable." Iowa R. App. P. 6.101(1)(d). And a voluntary dismissal of the last remaining claim in a case, except in the days just before trial, is "self-executing and mark[s] the date of finality for appeal" of any of those previous interlocutory orders. *Valles v. Mueting*, 956 N.W.2d 479, 484 (Iowa 2021); *see also* Iowa R. Civ. P. 1.943.

Here, the district court first dismissed Wheeler from this suit in August 2020, then later dismissed Carson Stone. This left Lightwine as the sole remaining defendant. Once the Yakels voluntarily dismissed Lightwine on April 17, 2023, that dismissal was self-executing. *See Valles*, 956 N.W.2d at 484. It matters not that the dismissal included a request that the court "deem their claims against" Lightwine dismissed and "recognize [their] continued claims against" the other defendants—no court order was needed to finalize the case for appeal. *See id.* Thus, the Yakels timely appealed from the dismissal of the last remaining defendant. And so, this court has jurisdiction to review the August 2020 summary judgment ruling.

### III.     Breach of Contract

Turning to the merits, we first consider whether the district court erred in granting summary judgment on the Yakels' breach-of-contract claim against Wheeler. We review this ruling for correction of errors at law. *See Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011).

Under Iowa Rule of Civil Procedure 1.981, the district court must grant a motion for summary judgment when the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The nonmoving "party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5).

The record must be viewed in the light most favorable to the nonmoving party. *See Peak*, 799 N.W.2d at 542. But our supreme court has warned, "Summary judgment is not a dress rehearsal or practice run for trial but rather the put up or shut up moment in a lawsuit, when a nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Buboltz v. Birusingh*, 962 N.W.2d 747, 754–55 (Iowa 2021) (cleaned up). "And if, after considering all that evidence in the light most favorable to the nonmoving party, no reasonable mind could differ on how the factual issues should be resolved—and the law applied to those facts compels judgment for the moving party—summary judgment must be granted." *In re Est. of River*, 6 N.W.3d 13, 17–18 (Iowa Ct. App. 2024).

The Yakels argue that they presented sufficient evidence to generate a jury question on whether they orally contracted with Wheeler to have him serve as a general contractor, which in turn generates a jury question as to whether he should be held liable for the project's deficiencies. But like the district court, we see no evidence from which a reasonable juror could conclude the parties intended for Wheeler to serve as a general contractor.

It is undisputed that Wheeler was hired to design the project and solicit bids for the necessary construction work. It is also undisputed that the Yakels chose to hire Lightwine and paid Lightwine directly. And to remove any remaining doubt,

the Yakels both testified—twice each—that they did not hire Wheeler to be a general contractor, nor did they believe him to be their general contractor during the project. As Therese Yakel herself succinctly phrased it, "Randy [Wheeler] was not our general contractor."

"If a party testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as an informal judicial admission." *Snittjer Grain Co. v. Koch*, 71 N.W.2d 29, 34 (Iowa 1955); *see also Yockey v. State*, 540 N.W.2d 418, 421 (Iowa 1995) (same). This is true of deposition testimony submitted at summary judgment the same as trial testimony on a directed verdict. *See Glen Haven Homes, Inc. v. Mills Cnty. Bd. of Rev.*, 507 N.W.2d 179, 181–82 (Iowa 1993) (affirming grant of summary judgment on a claim of "substantial change of circumstances" because it "was negated by the deposition testimony of [the claiming party's] managing agent" that conceded there had been "no change in material facts," which was "a vicarious admission binding" on the party "unless altered or withdrawn"); *C&F Maint. & Prop. Mgmt., Inc. v. Eliason & Knuth Drywall Co.*, 418 N.W.2d 44, 47 (Iowa 1988) (recognizing that "deposition testimony" of a contracting party "might be binding as a judicial admission" on the meaning of a contract but only in a suit between the contracting parties). Wheeler is entitled to hold the Yakels to their consistent testimony—not just once, but each of them twice—that they did not intend to orally contract with him to be a general contractor.

The Yakels acknowledge this testimony, but still argue that Wheeler's conduct overseeing the project and Lightwine's belief that Wheeler was the general

contractor is enough to generate a jury question on whether the Yakels and Wheeler entered into a general-contractor contract. And true, Wheeler took an active role in the project, and Lightwine's representative testified that the company largely followed Wheeler's decisions and presumed Wheeler was the general contractor. But evidence of what *other people* believed the arrangement to be is not probative of what relationship the *parties themselves* intended to create. Nor does evidence of Wheeler's intent generate a fact question as to the Yakels' intent. "A contract requires a meeting of the minds." *Peak*, 799 N.W.2d at 544. So we look for the parties' "*mutual* intent" not "some secret, undisclosed intention they may have had in mind, or which occurred to them later." *Id.* (cleaned up).

Thus, even if the Yakels' deposition testimony does not foreclose the introduction of other evidence on their intent, they have presented no other conflicting evidence on that point that generates a fact dispute. And again, their testimony is not the only undisputed evidence showing that the Yakels did not intend to contract with Wheeler to be their general contractor. A general contractor is one "who contracts for the completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work." *General Contractor*, *Black's Law Dictionary* (11th ed. 2019). Wheeler did not enter into a contract with or pay Lightwine anything for this project. The Yakels selected Lightwine and paid Lightwine directly. They paid Wheeler only $800, which could not possibly be confused with payment for completion of the entire project.

In arguing otherwise, the Yakels point to *Anita Dairy, L.C. v. Kooiman*, No. 03-0966, 2004 WL 1854006 (Iowa Ct. App. Jul. 14, 2004), as a case where we reversed the grant of summary judgment and concluded there was a fact dispute

on the question whether a business was hired as a general contractor. But that opinion was vacated on rehearing by this court. And the new opinion issued on rehearing came out the other way—affirming the grant of summary judgment. *See Anita Dairy, L.C. v. Kooiman*, No. 03-0966, 2005 WL 67126, at *2–3 (Iowa Ct. App. Jan. 13, 2005). So while the Yakels' are correct that *Anita Dairy* is remarkably similar factually,[3] it's persuasive value cuts against their cause rather than supporting it.

Bottom line—even viewing the record in the light most favorable to the Yakels, we find no reasonable jury could find they intended to contract with Wheeler to provide general contractor services at any point during the project. And the Yakels' breach-of-contract claim rests entirely on that theory. Thus, we affirm the district court's dismissal of the breach-of-contract claim against Wheeler.

## IV.    Breach of Implied Warranty

We next address the Yakels' claim that Wheeler breached the implied warranty of workmanship applicable to general contractors. The Yakels correctly point out that it "has long been the law of this state" that "[i]n construction contracts there is an implied warranty that the building to be erected will be built in a reasonably good and workmanlike manner." *Kirk v. Ridgway*, 373 N.W.2d 491, 493 (Iowa 1985). But as with the breach-of-contract claim, this claim fails because

---

[3] *Anita Dairy* is in some ways a mirror image of this case. There, the plaintiff arguably generated a fact dispute about its intent (presenting testimony that it believed it *was* hiring defendant as a general contractor) but presented no evidence that the defendant shared that intent or engaged in any conduct showing it might be acting as a general contractor. *See Anita Dairy*, 2005 WL 67126, at *2–3. Just as here, that was not enough to generate a fact dispute about a mutual meeting of the minds to establish a general-contractor relationship.

the undisputed facts show that the Yakels did not enter into a construction contract with Wheeler for him to serve as a general contractor. Their contract was only for design services and assistance in finding their contractors. Wheeler thus did not have "ultimate responsibility" for completion of the siding. *Id.* at 496 (cleaned up). And so, this claim fails as a matter of law.

True, our supreme court has extended the availability of this implied-warranty claim beyond its contractual origins to purchasers and subsequent purchasers of a completed home from a builder-vendor. *See id.*; *Speight v. Walters Dev. Co.*, 744 N.W.2d 108, 114–15 (Iowa 2008). But given the court's refusal to extend the claim any further, we see no basis in the governing precedents to conclude that the court would further extend such liability to a party who only provided design and contractor-finding services. *See Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 902 (Iowa 2014) (declining to extend the claim's availability "to a lender acquiring apartment buildings by a deed in lieu of foreclosure"); *Rosauer Corp. v. Sapp Dev., L.L.C.*, 856 N.W.2d 906, 914 (Iowa 2014) (declining to extend claim to impose liability on land developer of empty lot); *Flom v. Stahly*, 569 N.W.2d 135, 142 (Iowa 1997) (declining to extend liability to homeowners who mainly constructed the house themselves for their own use). The district court did not err in granting summary judgment on the Yakels' breach-of-implied-warranty claim.

## V.     Negligent Construction and Economic-Loss Doctrine

Finally, the Yakels argue that even if there is no general-contractor agreement between themselves and Wheeler, the district court erred in dismissing their negligent-construction claim against Wheeler because it is an alternative

theory to recover for their damages caused by the improper installation of the siding that does not rely on a contractual relationship. Wheeler counters that dismissal of this claim can be affirmed based on the economic-loss doctrine. We agree with Wheeler that the economic-loss doctrine precludes any tort claim.[4]

Iowa follows the well-established rule "that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Neb. Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984). A "rationale for this limitation on recovery is that purely economic losses usually result from the breach of a contract and should ordinarily be compensable in contract actions, not tort actions." *Van Sickle Constr. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 693 (Iowa 2010) (cleaned up). We evaluate the policies behind contract law and tort law to decide "whether a loss is compensable in tort or in contract." *Id.*

As the supreme court has said, "the line to be drawn is one between tort and contract rather than between physical harm and economic loss. When, as here, the loss relates to a consumer or user's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, the remedy lies in

---

[4] Neither party raises an error-preservation concern about the district court's limited analysis of the economic-loss-doctrine issue. And we are independently satisfied that error is preserved. Both parties agreed at oral argument that the court implicitly relied on the economic-loss doctrine to dismiss the negligence claim. The Yakels filed a rule 1.904 motion asking the court to more clearly address the applicability of the economic-loss doctrine, and the court summarily denied it. There was nothing more they could do to preserve the issue. *See Madden v. City of Eldridge*, 661 N.W.2d 134, 138 (Iowa 2003). And as appellee, Wheeler is entitled to seek affirmance on any basis he argued to the district court regardless of whether the court ruled on that basis. *See Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 774 (Iowa 2009). What's more, both parties briefed the merits of the economic-loss doctrine in the district court and again here.

contract." *Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000) (cleaned up). So too here. The Yakels are disappointed consumers—they paid for subpar siding replacement. Thus, the economic-loss doctrine prevents the Yakels from bringing their negligence claim against Wheeler over their "defeated expectations." *Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011). Looking at the "the nature of the defect, the type of risk, and the manner in which the injury arose" as well as "the type of damages" the Yakels seek, they cannot recover under a tort claim because the siding "simply failed to do what it was supposed to do." *Determan*, 613 N.W.2d at 262–63 (cleaned up). "Tort theory . . . is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect." *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988). The Yakels' damages consist of the expenses they have incurred in repairing the siding to their home. This limits the present injury and recovery sought to the needed repairs, not a "sudden or dangerous occurrence." *Id.*

To avoid the economic-loss doctrine, the Yakels first argue that if we hold there was no general-contractor contract between themselves and Wheeler, then any rule requiring them to pursue breach-of-contract remedies necessarily plays no role. But the doctrine applies no matter if there is contractual privity between the parties. *Annett Holdings*, 801 N.W.2d at 504. Indeed, our supreme court has applied the "stranger economic loss rule" to bar claims by plaintiffs with no contractual relationship to the defendant. *Id.* Contrary to the Yakels' argument in their brief, this does not create a "heads I win, tails you lose" outcome. Rather, it

would turn the doctrine on its head to allow tort claims for purely economic loss to proceed so long as there was no contract between the parties—the doctrine aims to prevent the "tortification of contract law" and "encourage[] parties to enter into contracts." *Id.* at 503–04; *see also Village at White Birch Town Homeowners Ass'n v. Goodman Assocs., Inc.*, No. 11-1842, 2012 WL 5356045, at *4–6 (Iowa Ct. App. Oct. 31, 2012) (holding that economic-loss doctrine precluded construction negligence claims even though plaintiff had no contract with the defendant subcontractors), *aff'd by equally divided court*, 2014 WL 1351058 (Iowa Apr. 4, 2014).

Second, the Yakels also seek to avoid the doctrine by alleging they experienced more than mere economic loss—also suffering property damage from the defective siding. But this argument overlooks that our decision rests on a consideration of "not only the type of risk, but also the nature of the defect, the manner in which the injury occurred, and the specific injury for which compensation is sought." *Determan*, 613 N.W.2d at 263. From balancing these factors, we see the Yakels' claim as based on their disappointed expectations with the quality of their home's siding and later efforts to replace the siding. Accordingly, their relief is grounded in contract law, not tort law. Their negligent construction claim is barred by the economic-loss doctrine and was thus properly dismissed.

**AFFIRMED.**