# IN THE SUPREME COURT OF IOWA

No. 21–0215

Submitted December 14, 2022—Filed February 3, 2023

**RITA McNEAL** and **CLIFF McNEAL,**

Appellants,

vs.

**WAPELLO COUNTY** and **WAPELLO COUNTY BOARD OF SUPERVISORS,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Wapello County, Shawn R. Showers, Judge.

Landowners appeal a district court's grant of summary judgment in an action against a county for breach of a settlement agreement. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, McDonald, and Oxley, JJ., joined. McDermott, J., filed a special concurrence. May, J., took no part in the consideration or decision of the case.

Matthew G. Sease (argued) of Sease & Wadding, Des Moines, for appellants.

Hugh J. Cain (argued) (until withdrawal), Eric M. Updegraff, Brent L. Hinders, and Daniel J. Johnston (until withdrawal) of Hopkins & Huebner, P.C., Des Moines, for appellees.

**MANSFIELD, Justice.**

### I. Introduction.

How canst thou make me satisfaction? William Shakespeare, *Henry V* act IV, sc. 8, l. 46–47.

A problem for King Henry V, a problem in this case. Since Shakespeare's time, "satisfaction" has had both subjective and objective components. Colloquially sometimes we say that a person has been satisfied when they *feel* satisfied, sometimes we say so when objectively they *ought to be* satisfied. The law is no different. When a contract requires performance of a covenant to a party's satisfaction, sometimes we place a subjective gloss, sometimes an objective gloss, on that language.

In this case, landowners were operating a vehicle repair and salvage business on R-1 residential property in Wapello County. When the County notified the landowners of its plans to clean up the alleged nuisance, the parties entered into a settlement agreement. Under the agreement, the landowners were to remove "derelict vehicles" from the property, among other things. After forty-five days, the County could enter the property "to determine what remaining . . . derelict vehicles" still needed to be removed and notify the landowners. If the landowners did not remove "derelict vehicles . . . to the satisfaction of the County" at the expiration of ninety days, the County could enter again and remove the "derelict vehicles."

At the end of the ninety-day period, sixteen vehicles remained on this property—the same sixteen that had always been there. So the County had them

towed away, giving the landowners an opportunity to reclaim any of them by paying the towing and storage fees so long as they didn't bring them back to the property. None of the vehicles displayed a current license, many—if not all of them—were inoperative, the vehicles were generally decades old, and some of them were simply being mined for auto parts. Yet the landowners sued, asserting that the County had breached the agreement by removing a group of vehicles that were not "derelict."

The district court granted the County's motion for summary judgment, reasoning that the agreement allowed the County to decide subjectively whether it was satisfied with the removal of vehicles. The court of appeals reversed on the ground that an objective standard applied to the County's determination of its satisfaction under the agreement.

On further review, we agree with the court of appeals that an objective standard applies. But we find that the removal of the vehicles did not breach that objective standard. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**II. Background Facts and Proceedings.**

Together, Rita and Cliff McNeal are the owners of R&C Auto & Auto Repair, which is a vehicle repair and sales business located at their home in rural Wapello County. As part of their business, the two regularly purchase damaged or inoperative vehicles. They either repair and sell the vehicles, or they use them as sources of parts for other repairs. The McNeals store some of the inoperative automobiles on their home property.

The property is zoned R-1, a single-family residential district classification that does not allow the operation of a junk or salvage yard. *See* Wapello County, Iowa, Code of Ordinances § 40.12 (2019); *see also id.* § 40.05(53). The County zoning ordinance provides,

> This definition also includes auto or other vehicle or machinery wrecking or dismantling activities. . . . The presence on any lot, parcel or tract of land of three (3) or more wrecked, scrapped, ruined, dismantled or inoperative motor vehicles . . . shall constitute prima facie evidence of a junk or salvage yard. This does not include motor vehicles licensed for the current year as provided by law; and/or up to five (5) motor vehicles legally placed in storage; and/or more than five (5) legally stored vehicles if kept within a completely enclosed building or totally screened from view.

*Id.* § 40.05(53).

On January 21, 2019, the McNeals learned of a bid proposal by the County for "Property Clean-up and Debris Removal" at their home to occur on or before May 1. The bid proposal provided, "The property shall be cleaned and cleared of all brush, small trees, broken concrete and/or rock, trash, garbage and other types of debris." However, it stated that "[a]ll vehicles and trailers shall not be moved for clean-up or debris removal."

Within days, the McNeals filed a petition for declaratory judgment and injunctive relief against the County and its board of supervisors in the Wapello County District Court.[1] The petition alleged that the McNeals had not received proper notice or time to abate any charged violations.

---

[1]For simplicity, we will hereafter refer to the defendants collectively as "the County."

To resolve the litigation, the parties entered into a written settlement agreement on April 23. As part of this agreement, the McNeals dismissed their petition without prejudice.

The agreement also contained a series of four recitals. In the second recital, the parties "agreed that the McNeals have received notice pursuant to Iowa Code § 331.384(2)." The fourth (and final) recital stated, "WHEREAS, the Parties have agreed to a procedure if the McNeals fail to clean the Property in accordance with Iowa Code § 331.384 and Wapello County Ordinances."

The agreement also contained the following operative provisions:

1. The McNeals have 90 days from April 1, 2019 to clean the Property including the removal of debris and derelict vehicles and begin repairs on the residence . . . .

2. Forty-five days after April 1, 2019, (May 16, 2019) the McNeals grant to the County the right to enter onto the Property and to determine what remaining debris, derelict vehicles, or repairs need to be completed. The County will then notify the McNeals of the additional work which needs to be completed within the 90 day period.

3. If the removal of debris, derelict vehicles, and maintenance of the Property has not been completed to the satisfaction of the County by the end of the 90th day (June 30, 2019), then the McNeals grant unto the County the right for the County and/or its agents to enter onto the Property and to remove all remaining debris, derelict vehicles, and unrepaired structures. The County's cost in removing such debris, derelict vehicles, or structures will be assessed against the Property pursuant to provisions of Iowa law, including Iowa Code § 331.384.

4. . . . Other than the procedure set forth in this Settlement Agreement, the McNeals waive and release any other statutory or common law right to challenge the County's right to enter the Property and to conduct clean up activities, including any rights against the County's employees, elected officials, or agents.

. . . .

6. This Agreement is the entire agreement between the Parties and supersedes all prior discussions, understandings or representations. It may not be modified or amended, nor any waiver of its provisions, except by a written instrument executed by the parties.

The County zoning administrator entered the McNeals' property on May 19. No cleanup work had been done at that time. He sent a letter documenting these findings to the McNeals on May 21, but the County did not make the letter a part of the summary judgment record. When the ninety-day period ran out on June 30, the McNeals had not complied with the instructions in the zoning administrator's letter.

On August 5, after the ninety-day period plus another thirty-five days had elapsed, the County entered the McNeals' property and removed a large number of items, including sixteen vehicles. All but one of the vehicles had been sitting outside on the property. The only exception was a heavily damaged vehicle that was found under an open structure along with other debris.[2]

None of the sixteen vehicles removed displayed a dealer license plate or any indication of current licensure. However, the McNeals later attested that nine of the vehicles did have current dealer licensure; the rest of the vehicles did not. Some did not have licensure because no vehicle title could be found or because the vehicle was being used for parts. The removed vehicles were generally Chevy and Ford pickups and sedans from the 1980s, the 1990s, and the 2000s.

---

[2]The other items removed included a pole barn kit, trailers, a Chevy motor, a Ford motor, fuel tanks, a steel shed, a dog pen, a used furnace, a used water tap, and loose construction materials such as steel beams, sheet metal, windows, six exterior doors, 176 sheets of sheet rock, multiple pallets of shingles, a bathroom cabinet, a sink top, and thirty-six rolls of insulation.

The County sent a letter to the McNeals on August 27 advising them that they could retrieve any of these vehicles by providing an indication of title and paying the towing and storage fees, but the vehicles could not be returned to the McNeals' residence and would be destroyed if not retrieved within ten days.

On September 6, the McNeals filed another action in the Wapello County District Court, alleging that the County's removal of vehicles from their property breached the settlement agreement. The petition sought damages and injunctive relief. The County moved for summary judgment, arguing that its actions had complied with the settlement. The McNeals resisted, and the district court held a hearing.

The parties' disputes centered on paragraph three of the settlement agreement, which stated in part,

> If the removal of debris, derelict vehicles, and maintenance of the Property has not been completed to the satisfaction of the County by the end of the 90th day (June 30, 2019), then the McNeals grant unto the County the right for the County and/or its agents to enter onto the Property and to remove all remaining debris, derelict vehicles, and unrepaired structures.

The County argued that this language gave the County sole discretion to determine whether vehicles were "derelict." The McNeals countered that there were genuine issues of material fact whether the vehicles were, in fact, derelict, and they argued that the County did not have absolute discretion to make that determination.

The district court agreed with the County's position and granted summary judgment. The court reasoned,

Derelict is mentioned five times in the agreement. The first instance grants [the McNeals] 90 days to remove derelict vehicles. The second grants [the County] the right to enter upon the property and to determine what remaining derelict vehicles need to be completed. The third is to indicate that the removal of derelict vehicles must be done to the satisfaction of the [County]. The fourth is if the [County is] not satisfied, [it] may remove the derelict vehicles. The fifth is that the [County] may assess the cost in removing derelict vehicles to the [McNeals].

Based upon the language used in the agreement, the Court finds it [was] the intent of the parties that [the County] be granted the discretion to determine what constitutes derelict. . . . Because the determination of dereliction is an exclusive power of [the County], and not the process by which the vehicles are removed, the Court finds that interpretation of derelict is a right conferred to [the County] by the agreement.

The McNeals appealed. We transferred the case to the court of appeals, where a divided panel reversed the district court judgment and remanded for further proceedings. The court of appeals majority found that the County did not have absolute discretion to decide whether a given vehicle was derelict. As the majority put it, "[N]owhere in the agreement does it say that the county will be the party deciding on the definition." The majority added, "A fair reading of paragraph three as drafted contemplates the [C]ounty only removing vehicles that met a common understanding of the term derelict."

A dissenting judge disagreed. She urged that the settlement agreement, read as a whole, effectuated a trade-off. The McNeals were given more time to clean up their property in return for the County getting discretion to decide what needed to be cleaned up, including which vehicles. Thus, she reasoned that the cleanup, including the determination of which vehicles would be considered derelict, was to be performed to the County's satisfaction.

The County applied for further review, and we granted its application.

**III. Scope and Standard of Review.**

We review a grant of summary judgment for correction of errors at law. *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011). "Summary judgment is proper when the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *EMC Ins. Grp. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021) (quoting *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020)). This is "the put up or shut up moment in a lawsuit"; a nonmovant "must show what evidence it has that would convince a trier of fact to accept its version of the events." *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 88 (Iowa 2022) (quoting *Buboltz v. Birusingh*, 962 N.W.2d 747, 754–55 (Iowa 2021)).

**IV. Analysis.**

**A. General Principles.** Contract interpretation is the general process "for determining the meaning of the words used by the parties in a contract." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008). "We now recognize the rule in the Restatement (Second) of Contracts that states the meaning of a contract 'can almost never be plain except in a context.' " *Id.* at 436 (quoting Restatement (Second) of Conts. § 212 cmt. *b*, at 126 (Am. L. Inst. 1981) [hereinafter Restatement (Second)]).

Thus, we adhere to the Restatement (Second)'s approach in considering the contract as a whole—and pertinent extrinsic evidence—before determining whether the contract is ambiguous and what it means. *Pillsbury Co.*, 753 N.W.2d

at 435. "[A]ny determination of meaning or ambiguity should only be made in the light of relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties." *Id.* (quoting *Fausel v. JRJ Enters.*, 603 N.W.2d 612, 618 (Iowa 1999)); *accord Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 687 (Iowa 2020); *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014); *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 107–08 (Iowa 2011).

Introducing extrinsic evidence may implicate the parol-evidence rule. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011). This settlement agreement contained an integration clause, stating that it was "the entire agreement between the Parties and supersede[d] all prior discussions, understanding or representations." For agreements that are fully integrated—meaning that the parties adopted a writing as the final and complete expression of their agreement—the parol-evidence rule does not permit "the use of extrinsic evidence introduced solely to vary, add to, or subtract from the agreement." *Id.* However, "extrinsic evidence is admissible as an aid to interpretation when it sheds light on the situation of the parties, antecedent negotiations, the attendant circumstances, and the objects they were striving to attain." *Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984). Extrinsic evidence may be offered to show the meaning of what the parties said, but not to show what they meant to say. *Bankers Tr. Co. v. Woltz*, 326 N.W.2d 274, 276 (Iowa 1982).

The law favors settlements. *Walker v. Gribble*, 689 N.W.2d 104, 109 (Iowa 2004). "We have long held that voluntary settlements of legal disputes should be encouraged, with the terms of settlements not inordinately scrutinized." *Id.* (quoting *Wright v. Scott*, 410 N.W.2d 247, 249–50 (Iowa 1987) (en banc) (per curiam)). Particularly with settlement agreements, "in the absence of an express reservation of rights, a settlement agreement disposes of all claims between the parties arising out of the event to which the agreement related." *Waechter v. Aluminum Co. of Am.*, 454 N.W.2d 565, 568–69 (Iowa 1990).

When a contract requires something to be done to a party's satisfaction, courts apply either an objective or a subjective standard of satisfaction. *Emp. Benefits Plus, Inc. v. Des Moines Gen. Hosp.*, 535 N.W.2d 149, 154 (Iowa Ct. App. 1995) (en banc). The court of appeals has summarized the general rule well:

> Absent express contractual language indicating which standard to apply, the objective reasonable satisfaction standard is applied when the contract involves commercial quality, operative fitness, or mechanical utility which knowledgeable persons are capable of judging; the subjective personal satisfaction standard is applied when the contract involves personal aesthetics, taste or fancy. When the express language or nature of the contract do not make it clear that personal satisfaction is required, the law prefers the objective (reasonable person) standard.

*Id.* (citations omitted).

Along the same lines, the Restatement (Second) provides:

> When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance or with respect to something else, and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied.

Restatement (Second) § 228, at 181. We have also said, "[A] contract will not be interpreted giving discretion to one party in a manner which would put one party at the mercy of another, unless the contract clearly requires such an interpretation." *Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991).

**B. Deciding This Case.** We now turn to the fighting issue in this case: What does it mean to say that "the removal of debris, derelict vehicles, and maintenance of the Property has not been completed to the satisfaction of the County"? Are vehicles derelict simply because the County said they were, or does an objective standard apply? And if an objective standard applies, how do we resolve this case?

The County emphasizes several points. First, it highlights the satisfaction clause in paragraph three that we have just quoted. The County clearly wasn't satisfied here. Second, the County points to paragraph two which it views as an affirmation of the County's discretion. That paragraph grants the County after May 16, 2019, "the right to enter onto the Property and to determine what remaining debris, derelict vehicles, or repairs need to be completed." Third, it notes that the agreement was a settlement. Under the McNeals' interpretation, the County would still have to prove its original case on the merits, meaning that the settlement would have limited value. The County also observes that its zoning ordinance prohibited operating a junk or salvage yard on R-1 residential property, with "three (3) or more wrecked, scrapped, ruined, dismantled or inoperative motor vehicles" constituting prima facie evidence of a junk or salvage

yard. Wapello County, Iowa, Code of Ordinances § 40.05(53); *see id.* § 40.12. It was undisputed that many of the vehicles were inoperative and a few of them were scrapped or dismantled. Lastly, the County points to the evidence showing that it proceeded in good faith, whereas the McNeals refused to remove any vehicles.

The McNeals respond that the original bid notice stated that vehicles and trailers would be left in place. They point out that they have been operating their vehicle salvage and repair business since 1982. They deny that any of the vehicles were derelict, even though they acknowledge that some of the vehicles were not going to be repaired and were being cannibalized for parts. They also deny ever intending that the County would have complete discretion over what constitutes a "derelict vehicle." Lastly, they urge that the settlement agreement simply established a "procedure," as indicated in the last recital and in paragraph four of the agreement. They contrast "procedure" with "substance," and argue that the County did not have substantive rights under the settlement agreement to determine whether vehicles were derelict.

On our review, we sort through these contentions as follows.

To begin, we do not agree with the County that it had unfettered discretion to classify vehicles as derelict. At the same time, we do not agree with the McNeals that it is the court's (or a jury's) role to define "derelict vehicle." Reading the settlement agreement as a whole in light of the surrounding circumstances, we believe the relevant question is "whether a reasonable person in the position of the [County] would be satisfied." Restatement (Second) § 228, at 181. We think

it is "practicable to determine whether a reasonable person in the position of the obligor would be satisfied." *Id.* There is a preference for an objective standard in the absence of express language to the contrary. *Id.* § 228 cmt. *b*, at 183; *see Emp. Benefits Plus*, 535 N.W.2d at 154. The settlement does not use a phrase like "as determined by the County in its sole discretion." Also, the duties imposed by the settlement agreement were not inherently personal or difficult to evaluate. This is more analogous to installing a heating system to a party's satisfaction than painting a portrait or providing music to a party's satisfaction. *See* Restatement (Second) § 228 cmt. *b*, illus. 3–5, at 183–84.[3] So, reading the contract as a whole, we believe that the relevant question is whether a reasonable person in the County's position would have been satisfied with the McNeals' removal of derelict vehicles, and whether the County's response was reasonable.

We are not persuaded that the word "procedure" will bear the weight either of the parties want to foist on it. It is true that the agreement lays out a series of steps that will occur. This series of steps is what the agreement means by "a procedure." *See Procedure, Webster's Third International Dictionary* 1807 (unabr. ed. 2002) (defining procedure, among other ways, as "a series of steps followed in a regular orderly definite way"). Still, each of these steps imposes *substantive* requirements. Step two is that the County gets to "determine" what remaining

---

[3]In their briefing before the district court, the McNeals said, "[I]t is presumed the McNeals were told to 'clean up' the Property because it was aesthetically displeasing." This might support the application of a subjective standard—to the County's benefit and the McNeals' detriment. *See Emp. Benefits Plus*, 535 N.W.2d at 154 ("Absent express contractual language indicating which standard to apply, . . . subjective personal satisfaction standard is applied when the contract involves personal aesthetics, taste or fancy."). Yet we are not persuaded that the determination of whether a vehicle is derelict involves high-level aesthetics as opposed to basic-level common sense.

debris and derelict vehicles need to be removed, and what maintenance needs to be performed. Step three is that the removal of debris, derelict vehicles, and maintenance will be performed "to the satisfaction of the County." Step five, to give another example, is that the McNeals will dismiss their lawsuit without prejudice. So the agreement, unquestionably, contains substantive requirements, and a couple of those steps involve some degree of County discretion.

Yet our determination that an objective standard governs the County's satisfaction does not mean that the grant of summary judgment necessarily has to be reversed. Litigants make extravagant claims all the time. For instance, as the court of appeals noted in the present case, "[C]ounsel [for the County] submitted that the county could, in its absolute discretion under the settlement agreement, decide that a brand-new vehicle with current license plates was derelict and remove it." We need not go that far. An appellant's or an appellee's brief is not an all-or-nothing proposition. We can accept a litigant's arguments in part and decide that the law is more nuanced.

Therefore, we now turn to whether a reasonable person would have been satisfied with the McNeals' cleanup. Our review of this issue might have benefited from the County's or the McNeals' inclusion of the County zoning administrator's May 21, 2019, letter in the record. But we don't get to make the record, we only get to review it. It should be noted that the McNeals, as the party claiming breach of contract, have the burden of proof. *See Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110–11 (Iowa 2013).

On this record, we find the McNeals failed to offer any competent proof that the County acted unreasonably in removing the vehicles from the property as derelict vehicles.

We emphasize that under our view of the law, the role of judge (or jury if necessary) is not to decide whether vehicles *actually were* derelict. Such an interpretation would give no weight to the additional language allowing the County "to determine" what removal of derelict vehicles needs to occur and requiring the removal to be "completed to the satisfaction of the County." *See Dickson v. Hubbell Realty Co.*, 567 N.W.2d 427, 430 (Iowa 1997) ("[I]t is assumed that no part of [a contract] is superfluous and an interpretation that gives a reasonable meaning to all terms is preferred to one that leaves a term superfluous or of no effect."); *Iowa Fuel & Mins.*, 471 N.W.2d at 863 (indicating that the preferred interpretation of a contract leaves no part of it superfluous). Thus, the bottom line is whether the County's classification of the vehicles as derelict was objectively reasonable.

None of the vehicles had current licensure on them. Some of them lacked titles. A few lacked vehicle identification numbers (VINs). The McNeals concede that many (if not all) of them were inoperative. Some of them were being used for parts only. Below is the only photo of a vehicle that was actually included in the summary judgment record. Is that a derelict vehicle? "I know it when I see it," Justice Potter Stewart might have said. *See Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).



E-FILED 2020 OCT 09 8:52 AM WAPELLO - CLERK OF DISTRICT COURT

Aug 5, 2019 9:24:49 AM

Iowa does not have a state law defining "derelict vehicle." However, a few other states do, and clearly some of the vehicles on the McNeals' property would have qualified under those definitions. *See* N.C. Gen. Stat. § 20-137.7(4) (2023) (stating that "[d]erelict vehicle" includes a vehicle "[w]hose certificate of registration has expired and the registered and legal owner no longer resides at the address listed on the last certificate of registration on record with the North Carolina Department of Transportation," "[w]hose major parts have been removed so as to render the vehicle inoperable and incapable of passing inspection as required under existing standards," or "[w]hich is more than 12

years old and does not bear a current license as required by the Department"); S.C. Code § 56-5-5810 (c) (2023) (stating that "[d]erelict vehicle" includes a vehicle "whose certificate of registration has expired and the registered owner no longer resides at the address listed on the last certificate of registration on record with the Department of Motor Vehicles," "whose motor or other major parts have been removed so as . . . to render the vehicle inoperable," or "which is more than eight years old and does not bear a current registration").[4]

The McNeals concede that they had not taken *any* vehicles off their property during the ninety-day period. This tends to bolster the reasonableness of the County's dissatisfaction because the settlement agreement expressly required the removal of "derelict vehicles" in three separate paragraphs. Clearly it was anticipated that the McNeals would remove *some* vehicles.

The County's decision on August 5 to determine that all the vehicles in question were derelict and to remove all of them was thus a reasonable response. The County could see that none of the vehicles had current licensure, most of them were decades old, some of them obviously could not be driven, and a few of them didn't even have VINs. Lacking car keys, the County had no way to tell whether a specific vehicle might have been capable of being driven and, perhaps, might not meet some definition of "derelict." The McNeals offered no proof that a specific vehicle was in good, running condition. Hence, we conclude as a matter

---

[4]The dictionary provides several alternative definitions of "derelict." *Derelict, Webster's Third International Dictionary* 607 (unabr. 2002). One is "abandoned," another is "run-down." *Id.* Abandoned may not be an apt characterization of the vehicles in question, but run-down seems to be.

of law that the County acted reasonably in towing all sixteen vehicles, while offering the McNeals the opportunity to retrieve any particular vehicle by paying the towing and storage fees for that vehicle. We conclude the district court properly granted summary judgment to the County.[5]

The McNeals assert in their affidavits that they did not consider the vehicles derelict because they "ha[d] productive value" and the McNeals "use[d]" them in their repair and salvage business. The McNeals claim not to have anticipated that the County would classify them as derelict. They also point out that the original bid for property cleanup and debris removal expressly excluded the removal of vehicles. Finally, they point out that they had been operating their auto repair and salvage business on the property for forty years.

These arguments fall short of creating a genuine issue of material fact for several reasons. As we have noted, the settlement agreement—as executed by the parties—required the removal of derelict vehicles to the County's satisfaction. Whether the McNeals believed they didn't have to remove any vehicles is beside the point. A party's "undisclosed, unilateral intent" in signing a settlement agreement doesn't matter if the agreement says otherwise. *Peak*, 799 N.W.2d at 544–45. And under the parol-evidence rule, a notice of bid for cleanup and debris removal that *excluded* vehicles can't alter subsequent contractual requirements that *included* removal of vehicles. *See Cannon v. Bodensteiner Implement Co.*,

---

[5]We also note that the McNeals have litigated the removal of the vehicles essentially as an all-or-nothing proposition. In their briefing they do not identify specific vehicles as nonderelict in the event they were to lose their primary argument that none of the vehicles are derelict.

903 N.W.2d 322, 328–29 (Iowa 2017).[6] Whether the McNeals might have had a legally protected nonconforming use is also not before us and was not raised before the district court. And a reasonable person could still view a vehicle as derelict even if it might have had value in a salvage and repair business.

In sum, we conclude that under the settlement agreement, derelict vehicles had to be removed to the County's satisfaction. This does not mean that the County could act unreasonably and arbitrarily. But it also did not mean that the McNeals could litigate the dispute as if there had been no settlement agreement. The law does indeed favor settlement agreements, and it shows this favoritism best of all by enforcing them as written. *See Peak*, 799 N.W.2d at 543. The district court properly granted summary judgment.[7]

**V. Conclusion.**

For the foregoing reasons, we affirm the district court's judgment and vacate the decision of the court of appeals.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., and Waterman, McDonald, and Oxley, JJ., join this opinion. McDermott, J., files an opinion concurring specially. May, J., takes no part.

---

[6]The record doesn't explain why the bid excluded vehicle removal, but it may be that the County contemplated using a separate tow service to remove vehicles.

[7]Although the McNeals' affidavits express dissatisfaction with other actions the County took during the cleanup of the property, they do not raise anything other than the removal of vehicles in their briefing.

**McDERMOTT, Justice (concurring specially).**

In affirming summary judgment in favor of Wapello County and its board of supervisors, the majority opinion focuses on the "satisfaction of the County" language in the settlement agreement and whether a reasonable person in the County's position would have been satisfied under the circumstances. While I agree that the grant of summary judgment should be affirmed, I arrive there through a different mode of analysis.

The McNeals focus their argument on the meaning of a particular term in the contract—"derelict vehicles"—and argue that its meaning is a disputed issue of material fact for the jury to resolve at a trial, not for the court to decide on summary judgment. The court of appeals was correct in its legal formulation that disputes about the meaning of words in contracts generally present questions of fact left to juries. "[T]he question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law." *Morris Plan Leasing Co. v. Bingham Feed & Grain Co.*, 143 N.W.2d 404, 412 (Iowa 1966) (quoting 3 Arthur Linton Corbin, *Corbin on Contracts: A Comprehensive Treatise on the Working Rules of Contract Law* § 554, at 219 (1960) [hereinafter *Corbin on Contracts*]). But not all questions about the meaning of terms are beyond a court's reach. "[I]f the evidence is so clear that no reasonable [person] would determine the issue before the court in any way but one, the court will itself determine the issue, either by directing the verdict or by dispensing with any verdict whatever." *Corbin on Contracts* § 554, at 222.

The purpose of contract interpretation "is always the discovery of actual intention: [1] the intentions of both parties if they are the same [or] [2] the actual intention of one party if the other knew or had reason to know what it was." *Hamilton v. Wosepka,* 154 N.W.2d 164, 168 (Iowa 1967) (quoting *Corbin on Contracts,* at III). The settlement agreement between the McNeals and the County called for the McNeals' removal of "derelict vehicles." The parties, it stands to reason, would not have included that specific term if the parties didn't believe at least *one* of the vehicles on the property at that time was derelict. This point is illustrated by the absence of any reference in the settlement agreement to any other items that were *not* present on the property that might require removal, such as, say, broken appliances or dilapidated gazebos.

And since the McNeals had reason to know that the County considered at least one vehicle on their property derelict, their argument that *none* were derelict requires us to read the settlement agreement against common sense. There would be no reason to include specific reference to derelict vehicles if none were present. The McNeals thus "knew or had reason to know" in this case "the actual intention of [the County]" about the meaning of "derelict vehicles" in the settlement agreement. *Id.* The agreement must have referred to at least one vehicle that was "derelict" existing on the McNeals' property at the time of the settlement agreement.

The failure to remove *any* vehicles from the property within the required period allowed the County to exercise the remedy it had bargained for in the settlement—entering onto the property and removing derelict vehicles with the

costs assessed to the McNeals. On the question of whether it was reasonable for the County to remove *all* the vehicles—and thus whether the County might have violated the settlement agreement by removing nonderelict vehicles along with the derelict—the McNeals have presented no evidence giving us any basis to disagree with the County's apparent determination that all were derelict.

As a result, contrary to the McNeals's argument, and contrary to the court of appeals' holding, the interpretation of the meaning of "derelict vehicle" in the settlement agreement is sufficiently clear in this case that the court can enter judgment against the McNeals as a matter of law. As Professor Corbin put the point:

> [W]e do not say that if no reasonable man would have used the words with any but one meaning, that meaning will be adopted by the court without aid from the jury. The person whose meaning is in issue may have been a very unreasonable man; such men make contracts. The court must indeed state the issue; it must determine the person or persons whose meaning shall be held to prevail. What that meaning was, though a question of fact, may be made so clear by the evidence that a jury's verdict to the contrary would be set aside.

*Corbin on Contracts* § 554, at 222–23. Finding no disputed factual issues remaining, I respectfully concur in affirming judgment in favor of the County.